## UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF KENTUCKY
## BOWLING GREEN DIVISION

**CIVIL ACTION NO. 1:08CV-00062-JHM**

**ITALO PEDICINI**                                                                 **PLAINTIFF**

**VS.**

**LIFE INSURANCE COMPANY OF ALABAMA**                          **DEFENDANT**

### MEMORANDUM OPINION AND ORDER

This matter is before the Court on a motion by Plaintiff, Italo Pedicini, for partial summary judgment [DN 42], on a motion by Defendant, Life Insurance Company of Alabama, for summary judgment [DN 44], on a motion by Defendant to exclude Plaintiff's expert report [DN 49], on a motion by Defendant for a hearing [DN 51], and on a motion by Defendant to notify the court of new case law [DN 56]. Fully briefed, these matters are ripe for decision. For the reasons set forth below, Plaintiff's motion for partial summary judgment is granted and Defendant's motion for summary judgment is denied.

### I.  STANDARD OF REVIEW

In order to grant a motion for summary judgment, the Court must find that the pleadings, together with the depositions, interrogatories, and affidavits, establish that there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56. The moving party bears the initial burden of specifying the basis for its motion and of identifying that portion of the record which demonstrates the absence of a genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). Once the moving party satisfies this burden, the non-moving party thereafter must produce specific facts demonstrating a genuine issue of fact for trial. Anderson v. Liberty Lobby, Inc. 477 U.S. 242, 247-48 (1986).

Although the Court must review the evidence in the light most favorable to the non-moving party, the non-moving party is required to do more than simply show that there is some "metaphysical doubt as to the material facts." <u>Matsushita Elec. Indus. Co. v. Zenith Radio Co.</u>, 475 U.S. 574, 586 (1986). Rule 56 requires the non-moving party to present "*specific facts* showing there is a *genuine* issue for trial." Fed. R. Civ. P. 56(e) (emphasis added). "The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff." <u>Anderson</u>, 477 U.S. at 252. It is against this standard that the Court reviews the following facts.

## II. BACKGROUND

This action arises under a supplemental cancer insurance policy issued by Defendant, Life Insurance Company of Alabama ("LICOA"), to Plaintiff, Italo Pedicini. On June 5, 1990, Plaintiff purchased a family supplemental cancer policy, Policy No. H 611589, issued by LICOA. The 1990 Policy provided unlimited benefits for chemotherapy and radiation treatments. Due to an ongoing increase in premiums, Plaintiff purchased a second policy from LICOA in October of 2001, Policy No. H 827124, placing a $25,000.00 annual cap for Radiation and Chemotherapy benefits. Because the cancer policy in question is a type of supplemental insurance, the insurance company pays cash benefits directly to the insured when an insured patient undergoes covered cancer treatment, regardless of whether the insured's medical expenses are paid by other insurance. The insured is free to use the cash benefits for any purpose, such as to defray the indirect expenses associated with a major illness.

Benefits under Plaintiff's policy vary as to the procedures performed. In many sections of the policy, benefits are calculated in relation to the "actual charges" for the covered procedures. For

example, the Radiation and Chemotherapy Benefit Rider attached to the 2001 Policy contained the

following provision with regard to benefits payable under the Rider:

> We will pay to a Covered Person actual charges not to exceed the amount stated in
> the Policy Schedule per calendar year, made per:
> 1.     Teleradiotherapy, using either natural or artificially propagated radiation,
>        when used for the purpose of modification or destruction of abnormal tissue
>        and not for diagnostic purposes;
> 2.     Interstitial or intracavitary application of radium or radioisotopes in sealed
>        sources, application of radium or radioisotopic plaques or molds or the
>        administration internally, interstitially or intracavitarially of radium or
>        radioisotopes in non-sealed sources, all for the purpose of modification or
>        destruction of abnormal tissue and not for diagnosis; and
> 3.     Cancericidal chemical substances and their professional administration for
>        the purpose of modification or destruction of abnormal tissue, to the extent
>        these charges are not covered under (Attending Physician Benefits).

(2001 Policy, Radiation and Chemotherapy Benefit Rider.)   The 2001 Policy defines "actual

charges" as "**ACTUAL CHARGES:**  The actual charges made by a person or entity furnishing the

services, treatment or material."  (2001 Policy, Part 5 -Definitions, F.)

For a period of twenty years, LICOA paid benefits on "actual charges" based upon the face

amount of the billing issued by the covered medical providers to the insured.  (Hoyt Casey Dep. at

25-26, 91.)  In February 2001, without the issuance of any endorsement or rider to its policies,

LICOA changed its policies and practices so that LICOA paid benefits for "actual charges" based

upon the "amount the medical provider accepts as payment" as reflected in the insured's Explanation

of Benefits, rather than the face amount of the billing issued by the medical provider to the insured.

(Id. at 76.)  Hoyt Casey, Vice-President of LICOA, characterized the change in payment of benefits

as a change in "proof of loss requirements." (Id. at 32-33.)  According to Mr. Casey, in February of

2001, LICOA changed the documentation its insureds were required to submit to substantiate the

proof of loss.  LICOA did not send a notice to its policyholders at that time, but instead advised the

claimants of the additional documentation required when the insured made a claim under a supplemental cancer insurance policy. (Id.)

In February of 2007, Plaintiff was diagnosed with rectal cancer and began incurring charges for cancer-related services and treatments. From February to August of 2007, Plaintiff received chemotherapy and radiation treatments. Plaintiff submitted claims of over $25,000.00 to LICOA under the 2001 Policy based upon the full amount billed by medical providers for his chemotherapy and radiation treatments. Under the terms of the Radiation and Chemotherapy Rider to the 2001 Policy, Plaintiff maintains that he was entitled to the maximum annual benefit of $25,000.00. LICOA declined to pay any benefits until Plaintiff provided the Explanation of Benefits ("EOBs") reflecting the payment by Medicare and his health insurance provider. Relying upon its interpretation of "actual charges," LICOA declined to pay benefits based upon the face amount of the billing issued by the medical providers to the insured. Instead, LICOA paid benefits based upon the discounted amounts that the medical providers accepted as payment in full for the service as reflected by the EOBs.

As a result of these actions, on March 3, 2008, Plaintiff filed suit against LICOA in Barren Circuit Court for breach of contract, bad faith, breach of duty of good faith and fair dealing, and violation of the Fair Claims Settlement Practices Act. Plaintiff asserts that LICOA refused to pay the full amount of benefits owed under the supplemental cancer insurance policy issued by LICOA. An Amended Complaint was filed in the Barren Circuit Court on behalf of Plaintiff on August 10, 2008. Defendant removed this action to this Court on April 18, 2008. The breach of contract claim was bifurcated from the bad faith claim on April 2, 2009. The parties have now filed cross-motions for summary judgment on the breach of contract claim.

4

## III. DISCUSSION

The issue raised in the parties' motions for summary judgment is governed by the principles of contract interpretation.  The interpretation of an insurance contract is a question of law for the Court to decide.  Kemper Nat'l Ins. Companies v. Heaven Hill Distilleries, Inc., 82 S.W.3d 869, 871 (Ky. 2002); Equitania Ins. Co. v. Slone & Garrett, P.S.C., 191 S.W.3d 552, 556 (Ky. 2006).  "In construing a contract, a court's primary objective is to ascertain and to effectuate the intention of the parties to the contract from the contract itself."  Logan Fabricom, Inc. v. AOP Partnership LLP, 2006 WL 3759412, *2 (Ky. Ct. App. December 22, 2006).  "[I]n the absence of ambiguity, a written instrument will be enforced strictly according to its terms, and a court will interpret a contract's terms by assigning language its ordinary meaning and without resort to extrinsic evidence."  Frear v. P.T.A. Indus., Inc., 103 S.W.3d 99, 106 (Ky. 2003) (quotation and citation omitted).  See also York v. Kentucky Farm Bureau Mutual Ins. Co., 156 S.W.3d 291, 293 (Ky. 2005)("The clear and unambiguous words of an insurance contract should be given their plain and ordinary meaning.").  However, "[i]f the contract language is ambiguous, it must be liberally construed to resolve any doubts in favor of the insured."  Wolford v. Wolford, 662 S.W.2d 835, 838 (Ky. 1984).  "A contract is ambiguous if a reasonable person would find it susceptible to different or inconsistent interpretations."  Cantrell Supply, Inc. v. Liberty Mut. Ins. Co., 94 S.W.3d 381, 385 (Ky. Ct. App. 2002).

Plaintiff contends that LICOA breached the terms of the 2001 Policy by failing to pay benefits based upon the medical bills issued by the covered medical providers.  Plaintiff argues that the policy definition provides for payment of benefits based upon charges made by a medical provider as opposed to charges negotiated or charges allowed by Medicare.  Plaintiff further asserts

that for a period of twenty years, LICOA paid benefits under its definition of "actual charges" based upon the face amount of the billing issued by the covered medical providers to the insured.  (Casey Dep. at 8, 26.)  Plaintiff contends that as of February 2001, without the issuance of any endorsement or rider to its policies, LICOA unilaterally changed its policies and practices so that benefits for "actual charges" is now based upon the amount paid to the covered medical provider by Medicare or other insurance rather than face amount of the billing issued by the medical provider.   Plaintiff asserts that at no time subsequent to February 2001, including any time before the second policy was sold in October of 2001, or at any time prior to Plaintiff's submission of a claim, did Defendant advise Plaintiff of its change with regard to its interpretation of "actual charges" under the policy.  As a result, Plaintiff maintains that the amounts billed by the medical provider are the "actual charges" made by the provider and represent the correct interpretation for "actual charges" under the policy.  In the alternative, Plaintiff argues that the phrase "actual charges" is ambiguous, and under Kentucky law, the ambiguity in the insurance policy should be strictly construed against the insurance company.

Defendant contends that the term "actual charge" is the amount actually accepted by the medical provider as final payment as opposed to the gross billed amount.  Defendant maintains that to determine the normal, customary, and/or usual meaning of "actual charges" it is appropriate to look to dictionary definitions of each word.  According to Defendant, "actual" means real or existing and "charge" is defined as an expense, cost, or the price asked for something.  Tying these two definitions together, Defendant argues that "actual charge" means the "real cost" or "real expense," which is the amount accepted by the provider as final payment.  Defendant further argues that under the laws and regulations which govern Medicare, a provider cannot charge a patient more than the

6

amount allowed by Medicare and therefore a provider's "actual charge" cannot be more than the amount the provider is allowed to charge by law.

After review of the 2001 Policy language and the parties' arguments, the Court finds that the term "actual charges" is ambiguous. The term "actual charges" can be reasonably construed to mean the amount set forth on the statement sent by the medical provider to the patient. In other words, the amount the patient was originally billed for the medical services, even if the medical provider is required to accept less from the patient's insurance carrier or Medicare provider. On the other hand, "actual charges" could reasonably mean the amount accepted as payment by the medical provider from a third-party. See Ward v. Dixie Nat'l Life Ins. Co., 257 Fed. Appx. 620, 625 (4th Cir. Nov. 29, 2007); Smith v. Life Investors Ins. Co. of America, 2009 WL 3756911, *5 (W.D. Pa. Nov. 6, 2009). Furthermore, the Court finds that the definition of "actual charges" contained in the 2001 Policy does nothing to clarify the term since the definition uses the term being defined.

The vast majority of courts to address this issue have likewise concluded that the term "actual charges" in supplemental insurance policies similar to the policy in question is ambiguous. See Guidry v. American Public Life Ins. Co., 512 F.3d 177 (5th Cir. 2007); Ward v. Dixie National Life Ins. Co., 257 Fed. Appx. 620 (4th Cir. Nov. 29, 2007); Smith v. Life Investors Ins. Co. of Am., 2009 WL 375911 (W.D. Pa. Nov. 6, 2009); Lindley v. Life Investors Ins. Co. of America, 2009 WL 2163513 (N.D. Okla. July 17, 2009); Pierce v. Central United Life Ins. Co., 2009 WL 2132690 (D. Ariz. July 15, 2009); Hodges v. American Fidelity Assurance Co., 2008 WL 723994 (S.D. Miss. Mar.17, 2008); Conner v. American Public Life Ins. Co., 448 F. Supp. 2d 762 (N.D. Miss. 2006); Metzger v. American Fidelity Assurance Co., 2006 WL 2792435 (W.D. Okla. Sept. 26, 2006). However, at least one district court has held that the term "actual charges" unambiguously means

7

the amount accepted by the medical provider as full and final payment for services. <u>See</u> <u>Claybrook</u> <u>v. Central United Life Ins. Co.</u>, 387 F. Supp.2d. 1199 (M.D. Ala. 2005). <u>See also</u> <u>Philadelphia</u> <u>American Life Ins. Co. v. Charles Buckles</u>, 2009 WL 3403281 (11th Cir. Oct. 23, 2009)(interpreting "actual charges incurred" in supplemental insurance policy as the reduced amount that the hospital accepts from an insurance company as full payment).

For example, in <u>Ward v. Dixie National Life Ins. Co.</u>, 257 Fed. Appx. 620 (4th Cir. Nov. 29, 2007), the Fourth Circuit considered the interpretation of "actual charges" in a supplemental insurance policy and concluded that the definition of "actual charges" advanced by the defendant insurance companies was "not the only one possible when the language of the policy is considered in light of its context." <u>Id.</u> at 625; <u>Guidry</u>, 512 F.3d at 184.  The Fourth Circuit concluded that even using the defendant's approach of defining each word separately and then putting those definitions together, "[t]he words 'actual charges' could also be understood to mean the amount shown on the bill sent to the patient regardless of whether this amount is the same as the amount actually owed." <u>Id.</u>  Viewing the term "actual charges" from within the four corners of the policy, the Fourth Circuit found that "the phrase is ambiguous as there is nothing to indicate whether 'actual charges' is best understood to mean the amount actually billed or the amount actually owed." <u>Id.</u>  Further, the Fourth Circuit also examined the phrase "actual charges" as a term of art in the health insurance industry noting that numerous health care dictionaries define "actual charges" as the amount billed.  <u>Id.</u>  at 626 (citing <u>Mosby's Medical, Nursing, and Allied Health Dictionary</u> 26 (4th ed. 1994) ("actual charge, the amount actually charged or billed by a medical practitioner for a service. The actual charge may not be the same as that paid for the service by an insurance plan."); Lee Hyde, <u>The</u> <u>McGraw-Hill Essential Dictionary of Health Care</u> 133 (1988) ("actual charge. the amount a

physician or other practitioner actually bills a patient or his insurance for a medical service or procedure.")).  See also Ctrs. Medicare & Medicaid Servs., Glossary, www.cms.hhs.gov/apps/glossary ("Actual charges" is "[t]he amount of money a doctor or supplier charges for a certain medical service or supply. This amount is often more than the amount Medicare approves."). Because the policy itself did not indicate which definition was intended by the parties, the Fourth Circuit concluded that its meaning was ambiguous. In the present case, the Court finds the reasoning set forth in Ward persuasive and holds that the term "actual charges" as used in the supplemental insurance policy is ambiguous.

Having concluded that the insurance policy is ambiguous, the Court must determine what remedy flows from this decision.  Under Kentucky law, "a policy of insurance is to be construed liberally in favor of the insured and if, from the language, there is doubt or uncertainty as to its meaning, and it is susceptible to two interpretations, one favorable to the insured and the other favorable to the insurer, the former will be adopted."  St. Paul Fire & Marine Ins. Co. v. Powell-Walton-Milward, Inc., 870 S.W.2d 223, 227 (Ky. 1994).  See also Wolford v. Wolford, 662 S.W.2d 835, 838 (1984)( "If the contract has two constructions, the one most favorable to the insured must be adopted. . . .  If the contract language is ambiguous, it must be liberally construed to resolve any doubts in favor of the insured.").  Similarly, under the reasonable expectations doctrine, when such an ambiguity exists, the ambiguous terms should be interpreted "in favor of the insured's reasonable expectations."  True v. Raines, 99 S.W.3d 439, 443 (Ky. 2003).  "'The gist of the [reasonable expectation] doctrine is that the insured is entitled to all the coverage he may reasonably expect to be provided under the policy. Only an unequivocally conspicuous, plain and clear manifestation of the company's intent to exclude coverage will defeat that expectation.'"

Brown v. Indiana Ins. Co., 184 S.W.3d 528, 540 (Ky. 2005)(quoting Simon v. Continental Ins. Co., 724 S.W.2d 210, 213 (Ky. 1986)).

In the present case, the Court has found that the term "actual charges" in the insurance policy is reasonably susceptible to more than one interpretation; thus, the ambiguity must be construed in favor of the Plaintiff.  For the reasons discussed above, an insured such as Plaintiff had a reasonable expectation that he would be paid benefits for "actual charges" based upon the amount of the bill for services issued by the medical provider and not based upon the amount paid by Medicare or another third-party payor.

Further, LICOA's past treatment of claims based on "actual charges" supports the application of the doctrine of reasonable expectations in the present case.  For years, LICOA paid benefits for "actual charges" under this type of policy based upon the medical provider's bill without reduction for the amount the paid by Medicare or another third-party provider.  In fact, even after its decision in February of 2001 to change its interpretation of the term "actual charges," LICOA continued to use the same term in its policies. (Casey Dep. at 23-24).  The basis given by LICOA for changing its "proof of loss requirements" is that it learned in 2001 that the amount billed by the medical providers does not accurately reflect the amount of payment accepted by the medical provider.  As noted by the Fifth Circuit in Guidry v. American Public Life Ins. Co.,

> [W]e find it suspect that [the insurance company] maintains that "actual charges" unambiguously means the amount of the discounted bill when [the insurance company] admits that prior to August 2001 it paid all "actual charges" benefits based on the billed amount. The reality of negotiated discounts and the discrepancy between the original billed amount and the amount of the discounted bill are nothing new. It, therefore, seems very strange that a for-profit company would continue to pay benefits for years based on the larger billed amount when it was allegedly so clear that "actual charges" meant the amount of the discounted bill.

512 F.3d at 184.  Thus, LICOA's previous course of performance defeats any argument by LICOA

10

that the use of the term "actual charges" by the company in the 2001 Policy demonstrates a plain and clear manifestation of the company's intent to pay benefits based on the amount actually paid by Medicare or another third-party provider. The adoption of an unambiguous definition of "actual charges" by LICOA would have avoided the creation of a reasonable expectation by Mr. Pedicini and other insureds that the benefits would be paid based upon the bill submitted by the medical provider. "If [the insurance company] had intended to limit its coverage to the amount that medical providers usually and customarily charge or the amount they usually and customarily accept as payment from Medicare or other third-party payors, it knew how to draft such a provision." Smith, 2009 WL 3756911, *5.

Because the term "actual charges" is ambiguous, the term will be construed in favor of the policyholder and against LICOA. Accordingly, the Court will grant Plaintiff's motion for partial summary judgment on his breach of contract claim.

## IV.  CONCLUSION

For the reasons set forth above, **IT IS HEREBY ORDERED** that the motion by Plaintiff, Italo Pedicini, for partial summary judgment [DN 42] is **granted** and the motion by Defendant, Life Insurance Company of Alabama, for  summary judgment [DN 44] is **denied**.

**IT IS FURTHER ORDERED** that the motion by Defendant to exclude Plaintiff's expert report [DN 49] is **denied as moot**. The Court did not consider the expert report of Burke Christensen in deciding the cross-motions for summary judgment. **IT IS FURTHER ORDERED** that the motion by Defendant for a hearing [DN 51] is **denied** and the motion by Defendant to notify the court of new case law [DN 56] is **granted**.

cc: counsel of record